IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>CARDINAL FENCING, INC. and<br>FRANK O. BONNER,<br><br>   Defendants. | Civil Action No. 5-06cv1268 |

## CONSENT DECREE

WHEREAS, the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), filed the Complaint herein contemporaneously with the filing of this Consent Decree, against Defendants Cardinal Fencing, Inc. and Frank O. Bonner (collectively, "Defendants"), alleging that Defendants violated Section 301(a) of the Clean Water Act ("CWA"), 33 U.S.C. § 1311(a);

WHEREAS, the Defendant Frank Bonner is the owner of property consisting of 28.4 acres located adjacent to the north bank of the Tuscarawas River in Township 1 North, Range 11 West, Akron, Summit County, Ohio (hereinafter referred to as the "Site" and as depicted in Appendix A hereto);

WHEREAS, the Complaint alleges that Defendants violated CWA Section 301(a) by discharging dredged or fill material and/or controlling and directing the discharge of fill material into waters of the United States on approximately 18 acres on the Site

(hereinafter referred to as "Filled Areas" and described and depicted on Appendix B hereto), without authorization by the United States Department of the Army Corps of Engineers ("the Corps");

WHEREAS, the Complaint alleges that Defendants failed to comply with the terms of a September 2, 1998, administrative Consent Agreement and Consent Order ("CACO"), Docket No. 5-CWA-95-012, which required Defendants to apply for an after-the-fact permit pursuant to section 404 of the CWA, 33 U.S.C. § 1344;

WHEREAS, the Complaint seeks to: (1) require Defendants to pay civil penalties as provided in 33 U.S.C. § 1319(g)(9) for failing to comply with the September 2, 1998, CACO; (2) require Defendants to pay interest, attorneys' fees and costs for collection proceedings, and a quarterly non-payment penalty; (3) award the United States costs and disbursements; and (4) obtain such other relief as the Court may deem just and proper;

WHEREAS, this Consent Decree is intended to constitute a complete and final settlement of the United States' claims under the CWA set forth in the Complaint regarding the Site;

WHEREAS, the United States and Defendants agree that settlement of this case is in the public interest and that entry of this Consent Decree is the most appropriate means of resolving the United States' claims under the CWA against Defendants in this case; and

2

WHEREAS, the Court finds that this Consent Decree is a reasonable and fair settlement of the United States' claims against Defendants in this case, and that this Consent Decree adequately protects the public interest in accordance with the CWA and all other applicable federal law.

THEREFORE, before the taking of any testimony upon the pleadings, without further adjudication of any issue of fact or law, and upon consent of the parties hereto by their authorized representatives, it is hereby ORDERED, ADJUDGED and DECREED as follows:

I.  <u>JURISDICTION AND VENUE</u>

1.  This Court has jurisdiction over the subject matter of this action and over the parties pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

2.  Venue is proper in the Northern District of Ohio pursuant to CWA Section 309(b), 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b) and (c), because the Defendants conduct business in this District, the subject property is located in this District, and the causes of action alleged herein arose in this District.

3.  The Complaint states claims upon which relief can be granted pursuant to Sections 301, 309 and 404 of the CWA, 33 U.S.C. §§ 1311, 1319 and 1344.

3

## II.  APPLICABILITY

4.  The obligations of this Consent Decree shall apply to
and be binding upon Defendants, their officers, directors,
agents, employees and servants, and their successors and assigns
and any person, firm, association or corporation who is, or will
be, acting in concert or participation with any of the Defendants
whether or not such person has notice of this Consent Decree.  In
any action to enforce this Consent Decree against a Defendant,
the Defendant shall not raise as a defense the failure of any of
its officers, directors, agents, employees, successors or assigns
or any person, firm or corporation acting in concert or
participation with the Defendant, including but not limited to
Dorothy M. Bonner, to take any actions necessary to comply with
the provisions hereof.

5.  The transfer of ownership or other interest in the
"Wetlands Preservation Site" and/or the "Conservation Easement
Site" (as described in Appendix C, appended hereto and
incorporated herein by reference) to the Ohio Department of
Natural Resources, shall not alter or relieve Defendants of their
obligation to comply with all of the terms of this Consent
Decree.  At least fifteen (15) days prior to the transfer of
ownership or other interest in the Conservation Easement Site,
the party making such transfer shall provide written notice and a
true copy of this Consent Decree to its successors in interest

4

and shall simultaneously notify EPA and the United States
Department of Justice at the addresses specified in Section ~~IX~~ VIII (J.R.A.)
below that such notice has been given.

III. <u>SCOPE OF CONSENT DECREE</u>

6.   This Consent Decree shall constitute a complete and
final settlement of all civil claims alleged in the Complaint
against the Defendants under CWA Sections 301, 309 and 404
concerning the Site.

7.   It is the express purpose of the parties in entering
this Consent Decree to further the objectives set forth in CWA
Section 101, 33 U.S.C. § 1251.  All obligations in this Consent
Decree or resulting from the activities required by this Consent
Decree shall have the objective of causing Defendants to achieve
and maintain full compliance with, and to further the purposes
of, the CWA.

8.   Defendants' obligations under this Consent Decree are
joint and several.

9.   Except as in accordance with this Consent Decree,
Defendants and Defendants' agents, successors and assigns are
enjoined from discharging any pollutant into waters of the United
States, unless such discharge complies with the provisions of the
CWA and its implementing regulations.

10.  The parties acknowledge that the terms of this Consent
Decree result from an enforcement action brought pursuant to

5

Section 404 of the CWA, and that Nationwide Permit 32, found at 67 Fed. Reg. 2020 (Jan. 15, 2002), and specifically paragraph 32 (ii), authorizes any fill that was placed in the Site as of 1993 to remain in place, subject to the conditions provided in the Nationwide Permit 32 and this Consent Decree.  In particular, the parties acknowledge that Nationwide Permit 32 covers the 18 acres that were filled on the Site as depicted and described in Appendix B hereto.  Additional movement, placement of additional fill, and/or leveling of fill solely upon the 18 acres described in Appendix B is expressly allowed under the terms of Nationwide Permit 32.

11.  Except as provided in paragraph 10, this Consent Decree is not and shall not be interpreted to be a permit or modification of any existing permit issued pursuant to Sections 402 or 404 of the CWA, 33 U.S.C. §§ 1342 or 1344, or any other law.  Except as provided herein, nothing in this Consent Decree shall limit the ability of the United States Army Corps of Engineers to issue, modify, suspend, revoke or deny any individual permit or any nationwide or regional general permit, nor shall this Consent Decree limit the EPA's ability to exercise its authority pursuant to Section 404(c) of the CWA, 33 U.S.C. § 1344(c).  In particular, Defendants and Defendants' agents, successors and assigns hereby acknowledge and agree that a permit pursuant to the CWA must be obtained for any ~~filling~~ filling J.R.A. of the

6

remaining 2.7 acres of wetlands on the Site described and depicted in Appendix B hereto.

12.   This Consent Decree in no way affects or relieves Defendants of their responsibility to comply with any applicable federal, state, or local law, regulation or permit.

13.   This Consent Decree in no way affects the rights of the United States as against any person not a party to this Consent Decree.

14.   The United States reserves any and all legal and equitable remedies available to enforce the provisions of this Consent Decree and applicable law.

15.   Except for Paragraphs 1-3 herein, nothing in this Consent Decree shall constitute an admission of fact or law by any party.

IV.   SPECIFIC PROVISIONS

16.   CIVIL PENALTIES

a.   Defendants shall pay a civil penalty to the United States in the amount of Fifty Thousand Dollars ($50,000), within 30 days of entry of this Consent Decree.

b.   Defendants shall make the above-referenced payment by FedWire Electronic Funds Transfer ("EFT" or wire transfer) to the U.S. Department of Justice account in accordance with current electronic funds transfer procedures, referencing U.S.A.O. file number 2001 V 00340, EPA Region 5 and the DOJ case number DJ #

7

90-5-1-1-16125. Payment shall be made in accordance with instructions provided to the Defendants by the Financial Litigation Unit of the United States Attorney's Office for the Northern District of Ohio. Any payments received by the Department of Justice after 4:00 P.M. (Eastern Time) will be credited on the next business day.

c. Upon payment of the civil penalty required by this Consent Decree, Defendants shall provide written notice, at the addresses specified in Section ~~IX~~ VIII J.R.A. of this Consent Decree, that such payment was made in accordance with Paragraph ~~17~~ 16 J.R.A.

d. Civil penalty payments pursuant to this Consent Decree (including stipulated penalty payments under Section VI) are penalties within the meaning of Section 162(f) of the Internal Revenue Code, 26 U.S.C. § 162(f), or of 26 C.F.R. § 1.162-21 and are not tax deductible expenditures for purposes of federal law.

17. <u>TRANSFER OF WETLANDS PRESERVATION SITE</u>

a. Defendant Frank Bonner is the husband of Dorothy M. Bonner, who is the owner in fee of the Wetlands Preservation Site, as described in Appendix C hereto, which consists of approximately 89 acres.

b. Defendants shall, within 60 days of entry of this Consent Decree, cause the transfer of the ownership in fee of the Wetlands Preservation Site to the Ohio Department of Natural

Resources. The Parties acknowledge that the Wetlands Preservation Site is being transferred in its natural state and Defendants have no obligations to remove fallen logs or other similar debris that may be found on the transferred property.

c. Defendants shall cause the deed to the Wetlands Preservation Site to contain certain deed restrictions to run with the land as set forth in Appendix D hereto.

d. The Wetlands Preservation Site shall be managed by the Ohio Department of Natural Resources in accordance with the deed restrictions set forth in Appendix D and as set forth in a Memorandum of Understanding, Appendix E hereto.

18. CONVEYANCE OF CONSERVATION EASEMENT

a. Defendant Frank Bonner is the husband of Dorothy M. Bonner, who is the owner in fee of the Conservation Easement Site, as depicted in Appendix C hereto.

b. Defendants shall, within 60 days of entry of this Consent Decree, cause the conveyance of a conservation easement as set forth in Appendix F hereto, on the parcel known as the Conservation Easement Site to the Ohio Department of Natural Resources.

19. RECORDATION OF DEED RESTRICTIONS AND CONSERVATION EASEMENT

a. Defendants shall, within fifteen (15) days of transfer of ownership of the Wetlands Preservation Site, record a copy of the deed restrictions pertaining to the Wetlands

9

Preservation Site as set forth in Appendix D hereto with the Recorder of Deeds Office, in Summit County, Ohio.

b. Thereafter, each deed, title, or other instrument conveying an interest in the Wetlands Preservation Site identified in Appendix C hereto shall contain the deed restrictions applicable to the property under this Consent Decree.

c. Defendants shall, within fifteen (15) days of conveyance of the conservation easement for the Conservation Easement Site, record a copy of the conservation easement pertaining to the Conservation Easement Site as set forth in Appendix F hereto with the Recorder of Deeds Office, in Summit County, Ohio.

d. Thereafter, each deed, title, or other instrument conveying an interest in the Conservation Easement Site identified in Appendix C hereto shall contain the conservation easement applicable to the property under this Consent Decree.

### V. NOTICES AND OTHER SUBMISSIONS

20. Within 30 days after the deadline for completing any task set forth in this Consent Decree (including but not limited to the payment of a civil penalty as set forth in Paragraph 16 hereto, the transfer of ownership of the Wetlands Preservation Site as set forth in Paragraph 17 hereto, the conveyance of the conservation easement as set forth in Paragraph 18 hereto, and

the recordation of the deed restrictions and conservation easement as set forth in Paragraph 19 hereto), the Defendants shall provide the United States with written notice, at the addresses specified in Section VIII of this Consent Decree, of whether or not that task has been completed.

21. With regard to the notice requirements specified in paragraph 20, if the required task has been completed, the notice shall specify the date when the task was completed, and enclose a copy of any document sent, transferred, conveyed and/or filed in connection with the completion of the task. If the required task has not been completed, the notice shall explain the reasons for any delay in completing the task beyond the scheduled time for such completion required by the Consent Decree.

22. In all notices, documents or reports submitted to the United States pursuant to this Consent Decree, the Defendants shall, by signature of a senior management official, certify such notices, documents and reports as follows:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering such information, the information submitted is, to the best of my knowledge and belief, true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

## VI.  STIPULATED PENALTIES

23.  After entry of this Consent Decree, if Defendants fail to timely fulfill any requirement of the Consent Decree, unless caused by a Force Majeure event as defined herein, including those tasks described in Paragraphs 16, 17, 18, and 19 hereto, Defendants shall pay a stipulated penalty to the United States for each violation of each requirement of this Consent Decree as follows:

| | | |
|---|---|---|
| A. | For Day 1 up to and including Day 30 of non-compliance | $1,000.00 per day |
| B. | For Day 31 up to and including Day 60 of non-compliance | $2,000.00 per day |
| C. | For Day 61 and beyond of non-compliance | $3,000.00 per day |

Such payments shall be made without demand by the United States on or before the last day of the month following the month in which the stipulated penalty accrued.

24.  In the event that a stipulated penalty payment is applicable and not made on time, interest will be charged in accordance with the statutory judgment interest rate provided for in 28 U.S.C. § 1961.  The interest shall be computed daily from the time the payment is due until the date the payment is made. The interest shall also be compounded annually.

25.  Defendants shall make any payment of a stipulated penalty by FedWire Electronic Funds Transfer ("EFT" or wire transfer) to the U.S. Department of Justice account in accordance

12

with current electronic funds transfer procedures, referencing

U.S.A.O. file number ___2001 V 00340 J.R.A.___, EPA Region 5 and the DOJ case

number 90-5-1-1-16125.  Payment shall be made in accordance with

instructions provided to the Defendants by the Financial

Litigation Unit of the United States Attorney's Office for the

Northern District of Ohio.  Any payments received by the

Department of Justice after 4:00 P.M. (Eastern Time) will be

credited on the next business day.  Further, upon payment of any

stipulated penalties, Defendants shall provide written notice, at

the addresses specified in Section ~~IX~~ VIII J.R.A. of this Decree.

## VII.  FORCE MAJEURE

26.    Notwithstanding the provisions in Section VI hereto,

if the action or inaction of a third party or other circumstances

occur beyond Defendants control that delays the timely

performance by Defendants of its obligations under this Consent

Decree, Defendants shall notify in writing EPA and the Department

of Justice, at the addresses stated in Section VIII below, within

fourteen days (14) of the date when Defendants first learned of

the circumstances, or within fourteen days (14) of the date when

Defendants should have known of the event by the exercise of due

diligence.  The notice shall describe in detail:  the event or

events which have prevented the Defendants from timely performing

its obligations, the anticipated length of time the delay may

persist, the measures taken or intended to be taken by Defendants

13

to prevent or minimize the delay, and the timetable by which those measures will be implemented. Failure to comply with the notice requirements of this section shall constitute a waiver of Defendants' right to obtain an extension of time under Paragraph 27 below.

27. If the parties to this Consent Decree agree that the Defendants' ability to timely perform any of its obligations under this Consent Decree has been or will be caused by circumstances beyond the control of the Defendants, and that Defendants could not have reasonably prevented such circumstances, the time for performance of such provision shall be extended in writing by EPA for a period equal to the actual delay resulting from such circumstances, and stipulated penalties shall not be due for the delay.

28. The following shall not serve as a basis for changes in this Consent Decree or extensions of time for the performance of its requirements: the failure of Dorothy M. Bonner to timely transfer property interests as described in paragraphs 17 and 18; and, J.R.A. changes in Defendants' financial circumstances;/ unanticipated or increased costs or expenses associated with the implementation of actions required by this Consent Decree ~~shall~~. J.R.A.

VIII. <u>ADDRESSES</u>

29. All notices and communications required under this Consent Decree shall be made to the parties through each of the

14

following persons and addresses:

    a.   <u>TO EPA</u>:

        (1)   William H. Wagner
             Associate Regional Counsel
             United States Environmental Protection Agency
             Region 5
             77 West Jackson Blvd. (C-14J)
             Chicago, IL 60604

        (2)   David W. Schulenberg
             United States Environmental Protection Agency
             Region 5
             77 West Jackson Blvd.
             Chicago, IL 60604

    b.   <u>TO THE UNITED STATES DEPARTMENT OF JUSTICE</u>

             Laurel A. Bedig, Attorney
             Environmental Defense Section
             Environment and Natural Resources Division
             U.S. Department of Justice
             P.O. Box 23986
             Washington, D.C. 20026-3986

    c.   <u>TO DEFENDANTS</u>:

             Cardinal Fencing, Inc. and Frank O. Bonner
             3437 Ley Drive
             Akron, OH 44319

             With a copy to:
             Keven Drummond Eiber, Esq.
             Brouse McDowell
             1001 Lakeside Ave., Suite 1600
             Cleveland, OH 44114

## IX.  <u>COSTS OF SUIT</u>

30.  Each party to this Consent Decree shall bear its own costs and attorneys' fees in this action.  Should Defendants subsequently be determined by the Court to have violated the terms or conditions of this Consent Decree, Defendants shall be

liable for any costs or attorneys' fees incurred by the United States in any action against Defendants for noncompliance with or enforcement of this Consent Decree.

### X.   PUBLIC COMMENT

31.  The parties acknowledge that after the lodging and before the entry of this Consent Decree, final approval by the United States is subject to the requirements of 28 C.F.R. § 50.7, which provides for public notice and comment.  The United States reserves the right to withhold or withdraw its consent to the entry of this Consent Decree if the comments received disclose facts which lead the United States to conclude that the proposed judgment is inappropriate, improper, or inadequate.  The Defendants agree not to withdraw from, oppose entry of, or to challenge any provision of this Consent Decree, unless the United States has notified the Defendants in writing that it no longer supports entry of the Consent Decree.

### XI.   CONTINUING JURISDICTION OF THE COURT

32.  This Court shall retain jurisdiction over this action in order to enforce or modify the Consent Decree consistent with applicable law or to resolve all disputes arising hereunder as may be necessary or appropriate for construction or execution of this Consent Decree.  During the pendency of the Consent Decree, any party may apply to the Court for any relief necessary to construe and effectuate the Consent Decree.

16

XII.   <u>MODIFICATION</u>

33.   Upon its entry by the Court, this Consent Decree shall have the force and effect of a final judgment.  Any modification of this Consent Decree shall be in writing, and shall not take effect unless signed by both the United States and the Defendants and approved by the Court.

XIII.   <u>TERMINATION</u>

34.  This Consent Decree may be terminated by either of the following:

a.   Defendants and the United States may at any time make a joint motion to the Court for termination of this Decree or any portion of it; or

b.   Defendants may make a unilateral motion to the Court to terminate this Decree after each of the following has occurred:

1. Defendants have obtained and maintained compliance with all provisions of this Consent Decree for twelve (12) consecutive months;

2. Defendants have paid all penalties and other monetary obligations hereunder and no penalties or other monetary obligations are outstanding or owed to the United States;

3. ~~Defendant's~~ Defendants [J.R.A.] have certified compliance pursuant to subparagraphs 1 and 2 above to the Court and all Parties; and

4. within forty-five (45) days of receiving such certification from the Defendants, EPA has not contested in writing that such compliance has been achieved.  If EPA disputes ~~Defendant's~~ Defendants' [J.R.A.] full compliance, this Consent Decree shall remain in effect pending

17

resolution of the dispute by the Parties or the Court.

IT IS SO ORDERED.

Dated and entered this ___9th___ day of _____August_____, 2006.


_____/s/ John R. Adams_____
United States District Judge


ON BEHALF OF THE UNITED STATES:

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division


_Laurel A. Bedig_                              Dated: _May 19, 2006_
LAUREL A. BEDIG, Attorney
Environmental Defense Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 23986
Washington, D.C. 20026-3986


_____                      Dated: __5/16/06__
MARK POLLINS, Director
Water Enforcement Division
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

William H. Wagner
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 West Jackson Blvd. (C-14J)
Chicago, IL 60604

18

FOR DEFENDANTS CARDINAL FENCING, INC.
and FRANK O. BONNER:

Dated: 12/30/05

KAREN L. WALTER, Esq.
Brouse McDowell
388 South Main Street, Suite 500
Akron, OH 44311-4407

Appendix A



N

WATERLOO RD.

O/E ACCESS

BREWSTER CR.

LEY DRIVE

I-277

O/E ACCESS RD.

WETLANDS

WETLANDS

DIKE

TUSCARAWAS RIVER

BONNER PROPERTY LINE

☐ JURISDICTIONAL WETLANDS ON SITE IN 1983

BONNER PROPERTY

*Appendix B*

## Revised Remote Sensing and Geographic Information System Analysis

The August 22, 2001 report entitled "Remote Sensing and Geographic Information System Analysis, Historical Aerial Photographs (1960 – 1990), Bonner Property, Coventry Township, Summit County, Ohio" by Davey Resource Group was reviewed and revised on October 23, 2001 during a technical discussion between the USEPA, COE and Davey. Modifications were made to the 1983 analysis based on this discussion.

In addition, the COE provided Davey a 1992 aerial that documented additional fill between April 19, 1990 and 1992. This aerial was interpreted to determine the amount additional fill that was placed on the east side of Brewster Creek during this time period.

These adjustments were made and the amount of wetlands that were filled between 1983 and 1992 is calculated to be 18.0 acres. Refer to attached documentation.

The types and acreages of wetlands that were filled can be determined by comparing the analysis of the revised 1983 photo and revised 1990 photos. The results are summarized below:

| Type of Wetlands Filled based on 1983 and 1990 Aerial Photographs | Acres |
|---|---|
| Forested Wetlands (FW) | 6.5 |
| Shrub Scrub (SS) | 6.4 |
| Wet Meadow (WM) | 3.4 |
| Standing Water (in cut and borrow area) | 1.5 |
| TOTAL | 17.8 |
| Note: The variation in size of the OW polygon (river) is not due to filling. This variation reflects the degree of error in defining polygons during the remote sensing analysis (due to actual thickness of hand drawn lines); errors in ortho-rectification due to perspective of aerial photos. We estimate the error to be plus or minus .3 acres. | |

Based on this remote sensing analysis, the amount of wetland fill between 1983 and 1992 is 17.8 to 18.0 acres.

Submitted on November 8, 2001
by
Elizabeth Buchanan and RJ Laverne
Davey Resource Group
1500 N. Mantua Street
Kent, OH 44240
330-673-5685, extension 17 (Buchanan)
330-673-0860, fax

## Comparison of revised 1983 data with revised 1990 data
### (which includes 1992 fill on east side of creek)

| | Upland | Wetlands + River | Total acres | Notes |
|---|---|---|---|---|
| 1983 | 5.9 | 22.5 | 28.4 | as revised on October 23, 2001 by COE, USEPA, Davey, DOJ |
| 1990 (and 1992) | 23.9 | 4.5 | 28.4 | 1990 plus new fill on east side of Brewster Creek per 1992 aerial photo |
| difference | -18.0 | 18.0 | | |
| | | | | |
| Acres of wetlands lost between 1983 and 1992 according to the remote sensing analysis is 18.0 | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

11/8/2001

Davey Resource Group

## Bonner Site - 1983
### Revised per *October 23, 2001 Meeting with USEPA, COE, DOJ*

| TYPE | ACRES | ACRES | COMMENTS |
|---|---|---|---|
| **Uplands** | | | |
| C/B-5 | 1.7 | | parts that were not standing water |
| UPL-12 | 0.1 | | |
| UPL-9 | 0.7 | | |
| | | | |
| ROW | 0.3 | | |
| UPL-4 | 2.8 | | |
| Berm | 0.4 | | |
| Total uplands | | 5.9 | |
| | | | |
| | | | |
| **River** | | | |
| OW-6 | 2.1 | | |
| Total river | | 2.1 | |
| | | | |
| **Wetlands** | | | |
| WM-1 | 3.1 | | |
| SS-7 | 1.2 | | |
| FW-10 and 11 | 0.2 | | |
| SS-3 | 5.8 | | |
| FW-2 | 0.4 | | |
| WM-13 | 0.3 | | |
| SW-1 | 1.5 | | |
| FW-8 | 8.0 | | |
| Total wetlands | | 20.4 | |
| **GRAND TOTAL** | 28.4 | 28.4 | |



Bonner Site - 1983

As Revised Oct 23, 2001

## Bonner Site -1990
## with 1992 fill on East side of Brewster Creek

| TYPE | ACRES | ACRES | COMMENTS |
|------|-------|-------|----------|
| **Uplands** | | | |
| NF-1 | 16.0 | | |
| NF-12 | 3.0 | | |
| UPL-10 | 0.0 | | |
| UPL-6 | 1.8 | | |
| C/D-U-13 | 0.3 | | |
| DEP-3 (orig. upl) | 0.3 | | depression in fill on west side of creek |
| DEP-5 (orig. upl) | 0.1 | | depression in fill on west side of creek |
| ROW | 0.3 | | |
| Berm | 0.3 | | |
| NF 92 | 1.5 | | new fill in 1992 per aerial photo from COE |
| Total uplands & filled areas | | 23.9 | |
| | | | |
| **River** | | | |
| OW-7 | 1.8 | | |
| Total River | | 1.8 | |
| | | | |
| **Wetlands** | | | |
| DEP-4 | 0.3 | | depression in fill on west side of creek |
| DEP-2 | 0.2 | | depression in fill on west side of creek |
| WFR-9 | 2.0 | | trees cut down and new growth started |
| FW-8 | 0.1 | | |
| SS-11 | 0.1 | | |
| Total wetlands | | 2.7 | |
| | | | |
| **GRAND TOTAL** | 28.4 | 28.4 | |

Davey Resource Group



Bonner Site - 1990

1992 New Fill East of Brewster Creek



Bonner Site - 1992
New Fill = 1.5 Acres

DAVEY
RESOURCE GROUP
A Division of The Davey Tree Expert Company

LAND COVER

| FOR UPL | WM | NF 1992 | Property |
| FW | WFR | CB-U | BERM |
| SS | NF | CD-L | ROW |
| UPL | DEP | CD-U | SW |
| | | CD | OW |

263646.3396
262996.266

266409.56
264457.6992
264308.3951

264385.1063
264415.7026
265269.17

266626.1246
266976.5013
265967.9201

266326.4534
267000.59

By                              Date

**Approved by Summit County Planing.**

_____

By                              Date

I CERTIFY THAT THIS PLAT HAS BEEN MADE FROM
AN ACTUAL SURVEY OF SAID PROPERTY AND THAT
THIS PLAT IS A TRUE AND ACCURATE REPRESENTATION
OF SAID SURVEY.

_____  _____

PAUL M. HARVEY, R.S. No. 5454                DATE

330-699-2193              330-388-8051

## Parcel Consolodation and Split

| REVISIONS | | SITE PLAN<br>MADE AT THE INSTANCE OF: |
|---|---|---|
| P.M.H. | 12/16/05 | Frank O. and Dorothy M. Bonner |
| P.M.H. | 12/27/05 | Coventry Township Tract 11 |
| P.M.H | 1/6/06 | County of Summit |
| P.M.H. | 1/26/06 | State of Ohio |
| P.M.H | 2/06/06 | Appendix "C" |
| | | JOB NO.   2005-101 |

fbrevis.zak

Turkeyfoot Lake Rd.

5517

# Appendix D

### Deed Restrictions For Wetlands Preservation Site

WHEREAS, the Wetlands Preservation Site (the "Site"), identified in Appendix C to the Consent Decree, possesses certain unique natural and ecological characteristics that the Grantor and Grantee wish to preserve for the benefit of the Grantor, the Grantee and the citizens of the State of Ohio;

NOW THEREFORE, the following covenants and restrictions are placed on the Site in perpetuity unto the Grantee and its assigns:

1.  The Site shall be kept in its natural state.  No new permanent structures or buildings shall be erected on the Site except those whose sole purpose is to enhance the public appreciation of the Site as a natural area, such as a wildlife observation tower, walkways, or hunting blind designed to minimally impact the natural state or fences that may be erected to protect threatened flora or natural communities.  However, no tower shall be constructed within 500 feet of the residence of Frank O. Bonner ("Bonner residence") and no walkway shall be constructed within 300 feet of the Bonner residence.  Further, no hunting blind shall be constructed or sited within 500 feet of the Bonner residence or within 200 feet of the commercial property ("Commercial site") located to the northwest of the Wetlands Preservation Site.  All hunting blinds constructed or sited on the Wetlands Preservation Site shall be oriented away from the Bonner residence and the Commercial site.  A sign shall be posted at any blind near the Commercial site that indicates that all shooting must be in the direction of Long Lake.  For purposes of these Deed Restrictions, the location of the Bonner residence and the Commercial site is as depicted in the plat map of the Site, Appendix C to the Consent Decree.

2.  There shall be no filling, excavating, removal of top soil, sand, gravel, rock, mineral, nor any building of roads or change in the topography of the land in any manner, other than that caused by the forces of nature.

3.  Spraying of herbicides or other pesticides is prohibited except for the control of non-native species and in accordance with generally accepted wildlife management practices.  There shall be no removal or destruction of native growth; no use of fertilizers; no introduction of non-native animals or disturbance or change in the natural habitat except in accord with generally accepted forestry practices.

4.  Any division or subdivision of the Site is prohibited.

5.  Commercial development or industrial activity is prohibited including the construction of billboards or other advertising, or the removal of trees or other vegetation for commercial purposes. No power transmission lines shall be erected over, through or under the Site and the exercise of eminent domain by public utilities is prohibited.

6.  The placement or construction of any new man-made modifications such as buildings, structures, fences, roads, utility lines, petroleum or natural gas wells,

tanks, or pipelines, or parking lots is prohibited except as allowed by any existing third party oil and gas rights ownership or as set forth in Paragraph 1, above.

7.    Waste, garbage and unsightly or offensive materials are not permitted and may not be accumulated on the Site.

8.    Natural water courses and streams and adjacent riparian buffers may not be dredged, straightened, filled, channelized, impeded, diverted or otherwise altered with the exception of the removal of logjams.

9.    Grazing of domestic animals excluding the temporary escapement of animals owned by adjacent landowners is prohibited.

10.   The draining of wetlands, marshes, bogs, or surface waters is prohibited unless temporarily needed for the control of invasive non native plants.

11.   The use by the public of any off-road motorized vehicles, including but not limited to snow mobiles and powered watercraft, on the Site is prohibited.

12.   Each and every other activity or construction project that is detrimental or adverse to soil and water conservation, wildlife conservation, habitat preservation or natural, scenic, biological, or ecological integrity of the Site shall be prohibited.

# Appendix E

**Memorandum of Understanding**
Between
Ohio Department of Natural Resources, Division of Wildlife
and the
United States Environmental Protection Agency
Region 5, Water Division
Watersheds & Wetlands Branch

***Whereas,*** the U.S. Environmental Protection Agency (U.S. EPA), through the U.S. Department of Justice ("DOJ"), filed a civil complaint against CARDINAL FENCING, INC. and FRANK O. BONNER (the "Defendants") which alleges that Defendants violated Section 301(a) of the Clean Water Act ("CWA") by discharging dredged or fill material and/or controlling and directing the discharge of fill material into wetlands, i.e., waters of the United States, on approximately 18 acres, without authorization by the United States Department of the Army Corps of Engineers.

***Whereas,*** the Defendants have agreed to settle this matter through a Federal Consent Decree which requires, in part, the transfer of ownership or other interest in the "Wetlands Preservation Site" (the "Site") and the "Conservation Easement Site" (the "Easement Site"), consisting of approximately 89 acres, to the Ohio Department of Natural Resources ("ODNR"), Division of Wildlife;

***Whereas,*** the U.S. EPA and the ODNR mutually acknowledge the Site possesses certain unique natural and ecological characteristics and shall be preserved in perpetuity for the benefit of the environment and the citizens of the State of Ohio;

***Whereas,*** the U.S. EPA and the ODNR mutually acknowledge that the Easement Site serves as a buffer to protect the Site, and that ODNR will manage and administer the Easement Site in accordance with the Conservation Easement, which is set forth at Appendix G to the Consent Decree referenced above;

***Whereas,*** the U.S. EPA and the ODNR mutually acknowledge the following covenants and restrictions placed on the Site which shall be managed and administered by the ODNR:

1. The Site shall be kept in its natural state. No new permanent structures or buildings shall be erected on the Site except those whose sole purpose is to enhance the public appreciation of the Site as a natural area, such as a wildlife observation tower, walkways, or hunting blinds designed to minimally impact the natural state, or fences that may be erected to protect threatened flora or natural communities. However, no tower shall be constructed within 500 feet of the residence of Frank O. Bonner ("Bonner residence") and no walkway shall be constructed within 300 feet of the Bonner residence. Further, no hunting blind shall be constructed or sited within 500 feet of

the Bonner residence or within 200 feet of the commercial property ("Commercial site") located to the northwest of the Wetlands Preservation Site. All hunting blinds constructed or sited on the Wetlands Preservation Site shall be oriented away from the Bonner residence and the Commercial site. A sign shall be posted at any blind near the Commercial site that indicates that all shooting must be in the direction of Long Lake. For purposes of these deed restrictions, the location of the Bonner residence and the Commercial site is as depicted in the plat map of the Site, Appendix C to the Consent Decree.

2. There shall be no filling, excavating, removal of top soil, sand, gravel, rock, minerals, nor any building of roads or change in the topography of the land in any manner, other than that caused by the forces of nature.

3. Spraying of herbicides or other pesticides is prohibited except for the control of non-native species and in accordance with generally accepted wildlife management practices. There shall be no removal or destruction of native growth; no use of fertilizers; and no introduction of non-native animals or non-native flora and fauna or disturbance or change in the natural habitat except in accord with generally accepted forestry practices.

4. Any division or subdivision of the Site is prohibited.

5. Commercial development or industrial activity is prohibited including the construction of billboards or other advertising, or removal of trees or other vegetation for commercial purposes. No power transmission lines shall be erected over, through or under the Site and the exercise of eminent domain by public utilities is prohibited.

6. The placement or construction of any new man-made modifications such as buildings, structures, fences, roads, utility lines, petroleum or natural gas wells, tanks, or pipelines, or parking lots is prohibited except as allowed by any existing third party oil and gas rights ownership or as set forth in Paragraph 1, above.

7. Waste, garbage and unsightly or offensive materials are not permitted and may not be accumulated on the Site.

8. Natural watercourses and streams and adjacent riparian buffers may not be dredged, straightened, filled, channelized, impeded, diverted or otherwise altered with the exception of the removal of logjams.

9. Grazing of domestic animals excluding the temporary escapement of animals owned by adjacent landowners is prohibited.

10. The draining of wetlands, marshes, bogs, or surface waters is prohibited unless temporarily needed for the control of invasive non-native plants.

2

11. The use by the public of any off-road motorized vehicles, including but not limited to snowmobiles and powered watercraft, on the Site is prohibited.

12. Each and every other activity or construction project that is detrimental or adverse to soil and water conservation, wildlife conservation, habitat preservation or natural, scenic, biological, or ecological integrity of the Site shall be prohibited.

13. The deed restrictions shall not prohibit or restrict lawful hunting, fishing or trapping in accordance with ODNR requirements, permits and/or licenses.

14. Additionally, ODNR will collaborate with local entities who are interested in the control, management and prevention of aquatic invasive species.

15. Obligations of the State are subject to the provisions of O.R.C. § 126.07.


for
_____     Dated: _January 30, 2006_
Jo Lynn Traub
Director, Water Division, U.S. EPA - Region 5
77 West Jackson Boulevard
Chicago, Illinois  60604-3590


_____     Dated:  2/07/06
Samuel W. Speck
Director, Ohio Department of Natural Resources


_____     Dated: Feb. 6, 2006
Steve Gray
Chief, Division of Wildlife


3

# Appendix F

### DEED OF CONSERVATION EASEMENT

This Deed is made this        day of                , 2006, by and between Dorothy M. Bonner, a married woman, Grantor, and the State of Ohio, the Ohio Department of Natural Resources, Grantee.

WHEREAS, Section 1501.01 of the Ohio Revised Code authorizes the Director of Natural Resources of the State of Ohio to acquire by purchase, lease or otherwise, such real and personal property rights or privileges in the name of the State of Ohio as are necessary for the purpose of the Department or any division therein; and

WHEREAS, said Grantor is the owner in fee of certain real property, herein after described, situated in Summit County, Ohio, which the Director of Natural Resources has determined to be of importance to the preservation of the 89.010 acre tract of wetlands located in Coventry Township, Tract 11, County of Summit, State of Ohio, which will or has been conveyed to the State of Ohio, Ohio Department of Natural Resources, pursuant to a Consent Decree in settlement of *United States of America v. Cardinal Fencing, Inc. and Frank O. Bonner*, U.S. District Court for the Northern District of Ohio, Civil Action Number _____.

NOW THEREFORE, and in consideration of ONE DOLLAR ($1.00), the Grantor does hereby grant and convey, in perpetuity, unto the State of Ohio and its assigns an estate, interest and conservation easement in said real property of the Grantor of the nature and character and to the extent hereinafter expressed, to be and to constitute a servitude upon said real property of the Grantor, which estate, interest, easement and servitude will result from the covenants and restrictions set out below and hereby imposed upon the use of said property of said Grantor, and to that end and for the purpose of accomplishing the intent of the parties hereto, said Grantor covenants on behalf of herself, her successors and assigns, with the State of Ohio and its assigns to do and refrain from doing, severally and collectively, upon the Grantor's said property, the various acts hereinafter mentioned, it being hereby agreed and expressed that the doing and the refraining from said acts, and each thereof, upon said property is and will be for the benefit of the State of Ohio, which lands are adjacent to the lands of the Grantor described below.

The restrictions hereby imposed upon the use of said property of the Grantor, and the acts which said Grantor so covenants to do and refrain from doing upon the said property in connection therewith are and shall be as follows:

1. The easement property herein described shall be kept in its natural state. As herein used, the term "natural state" is intended to mean that no buildings, billboards or other structures of any kind, either temporary or permanent, shall be placed or erected on the easement property.

2. There shall be on or in the easement property no filling, excavating, removal of top soil, sand, gravel, rock, minerals or other materials nor any building of roads or change in the

topography of the land in any manner, other than that caused by the forces of nature.

3. Herbicides or pesticides may only be used within the prescribed methods approved by the Ohio Department of Natural Resources, Division of Wildlife.

4. No power transmission lines may be erected, nor any interests in the easement property shall be granted for this purpose. It is the intent of this provision to grant to the State of Ohio, Department of Natural Resources, such an interest in said easement property as is sufficient to prohibit the exercise of the power of eminent domain by public utility companies and any other body or person. The Grantor reserves the right and easement on the real property to maintain and repair existing telephone, electric, water, wells, natural gas well, tank and pipeline, or other utility lines or mains needed to provide for the needs of the Grantor, her successors or assigns. The area needed to repair said facility shall be the minimum necessary to accomplish the task. Upon completion, the area shall be restored to its previous state or as near as practical.

5. Other than for activities provided for in Paragraph 4 above, no trees, ground cover, or other vegetation shall be removed unless approved by the Ohio Department of Natural Resources, Division of Wildlife.

6. The lands shall at all times be kept free of garbage, trash, and machinery, and no other unsightly material shall be allowed to accumulate or be stored thereon; except Grantor shall have no duty to remove such material unlawfully deposited on the premises by persons acting without the Grantor's consent.

7. Each and every other activity or construction which might endanger the natural or scenic state of the easement property is forbidden.

8. The Grantee has the right to enter the easement property at reasonable times to annually monitor or to enforce compliance with this Conservation Easement; provided, however, that such entry shall be upon two weeks prior notice to Grantor. The Grantee may not unreasonably interfere with the Grantor's use and quiet enjoyment of the easement property. The Grantee has no right to permit others to enter the easement property. The general public is not granted access to the easement property under this Conservation Easement.

9. The Grantee has the right to prevent any activity on or use of the easement property that is inconsistent with the terms or purposes of this conservation Easement.

10. The Grantee shall have the right to require the restoration of the area or features of the easement property which are damaged by any activity inconsistent with this Conservation Easement.

11. The Grantee shall have the right to place signs on the easement property which clearly mark boundaries and identify the land as being protected by this Conservation Easement. The number and content of any such signs are subject to the Grantor's approval.

2

The Conservation Easement hereby granted and the covenants hereby made are subject to the following rights of the Grantor:

1. Except as expressly limited herein, the Grantor reserves for herself, her heirs and assigns, all rights as owner of the easement property, including the right to use the easement property for all purposes not inconsistent with this easement.

2. The Grantor reserves the right to maintain the old river bank within the prescribed methods approved by the Ohio Department of Natural Resources, Division of Wildlife.

3. The Grantor reserves the right, but has no duty, to remove for safety purposes and for personal use as firewood, fallen logs or dead trees within the easement area.

The lands of the Grantor, referred to above and to which this instrument applies, are situated in the Township of Coventry, County of Summit, the State of Ohio, and are more particularly described as follows:

See Attached Site Plan, which is also Appendix C to the Consent Decree referenced above.

TO HAVE AND TO HOLD unto the State of Ohio and its assigns forever. The covenants agreed to and the restrictions imposed, as aforesaid, shall be binding upon the Grantor, her heirs, successors, and assigns, and each of them, and shall constitute a servitude upon the above described lands and said Grantor does COVENANT and WARRANT that the title to the land above described is CLEAR, FREE, and UNENCUMBERED, and that she will DEFEND the same against all lawful claims of all persons whomsoever.

Further, Frank O. Bonner, the spouse of Dorothy M. Bonner, hereby releases to said Grantee, its successors and assigns, all rights and expectancies of dower in the easement upon the above described premises.

IN WITNESS WHEREOF Dorothy M. Bonner and Frank O. Bonner have hereunto set their hands on

_____, 2006.


_____
Dorothy M. Bonner


_____
Frank O. Bonner


STATE OF OHIO, COUNTY OF_____SS:

BE IT REMEMBERED, that on the _____day of _____, 2006,

3

before me the subscriber, a Notary Public in and for said state and county, personally came the above-named Dorothy M. Bonner and Frank O. Bonner, who signed or acknowledged the signing of the foregoing instrument to be their voluntary act and deed.

      IN TESTIMONY WHEREOF, I hereunto subscribed my name and affixed my official seal on the day and year last aforesaid.

_____

NOTARY PUBLIC
My Commission Expires: _____

4